# Exhibit 19

Clean copy

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND T~~ ~~ ~~~~~ ~~ ~~~~~ ~~ ~~~~~~~ ~ING.
Compensation charged by real estate brokers is not set by law. Such charges are established by each real estate broker.

DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE BUYER AGENCY, SELLER AGENCY, SUBAGENCY OR TRANSACTION-BROKER.

## OPEN LISTING CONTRACT
### (FOR ALL TYPES OF PROPERTIES)
### (AGENCY)

Aspen_____, Colorado November 09, 1999

Landlocked Shipping Company
A Turks and Caicos Islands Company

Name(s) of Owner(s)

("Seller") hereby irrevocably appoint(s)
Houston and O'Leary, A ResortQuest Company
620 East Hyman Avenue, Aspen, Colorado 81611
Broker's Name and Address

("Broker") as Seller's exclusive agent for the purposes and under the terms specified herein, and the parties agree:

**1. PURPOSE OF AGENCY.** The purpose of this agency contract ("Listing Contract") is to engage the efforts of Broker to accomplish the sale of the real property legally described as:
Lot 10, Block 3, Red Mountain Ranch Subdivision, Pitkin County, Colorado

also known as  2137 Red Mountain Road        Aspen        Colorado        81611
                    Street Address              City         State          Zip
together with such items of personal property to be conveyed pursuant to Section 8 (collectively, the "Property").

**2. BROKER'S SERVICES.** Broker is a limited agent of the Seller and will represent only Seller.
   (a) Broker shall promote the interests of the Seller with the utmost good faith, loyalty and fidelity, including, but not limited to:
      (1) Seeking a price and terms which are acceptable to the Seller; except that Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a contract for sale;
      (2) Presenting all offers to and from the Seller in a timely manner regardless of whether the Property is subject to a contract for sale;
      (3) Disclosing to the Seller adverse material facts actually known by the Broker;
      (4) Counseling the Seller as to any material benefits or risks of a transaction actually known by the Broker;
      (5) Advising the Seller to obtain expert advice as to material matters about which the Broker knows but the specifics of which are beyond the expertise of the Broker;
      (6) Accounting in a timely manner for all money and property received; and
      (7) Informing the Seller that such Seller may be vicariously liable for the acts of such Seller's agent or any subagent when the Broker is acting within the scope of the agency relationship.
   (b) Broker shall not disclose the following information without the informed consent of the Seller:
      (1) That the Seller is willing to accept less than the asking price for the Property;
      (2) What the motivating factors are for the Seller to sell the Property;
      (3) That the Seller will agree to financing terms other than those offered;
      (4) Any material information about the Seller unless the disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing; or
      (5) Any facts or suspicions regarding circumstances which may psychologically impact or stigmatize any real property pursuant to Colorado law.
   (c) Broker shall disclose to any prospective buyer all adverse material facts actually known by Broker including but not limited to adverse material facts pertaining to the title to the Property and the physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which are required by law to be disclosed.

**3. SALE.** "Sale of the Property" or "Sale" means the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the right to acquire any interest in the Property (including a contract or lease).

**4. EFFECT OF THIS LISTING CONTRACT.** The Seller agrees to pay Broker a commission (described in Section 14) for Broker's services in case of any Sale by Broker during the Listing Period (described in Section 5) or upon the Broker procuring a buyer who is ready, willing and able to complete the Sale as proposed by the Seller (collectively, the "Broker Sale"). In the case of any other Sale, this Listing Contract is void and of no effect. Seller authorizes

The printed portions of this form have been approved by the Colorado Real Estate Commission. (LC14-9-95)
LC14-9-95 OPEN LISTING CONTRACT(AGENCY)(FOR ALL TYPES OF PROPERTY)
RealFA$T® Forms, Box 4700, Frisco, CO 80443, Version 6.00, ©RealFA$T®, 1999; Reg# CCOCOL222569
Completed by - Heidi Houston, Broker, Houston and O'Leary, Houston and O'Leary A ResortQuest Company
11/09/99 14:49:38

Page 1 of 4
Seller(s) _____

H 0019

**GOVERNMENT EXHIBIT 23 (ID)**

FORF000000330

Broker to disclose any facts about the Property. In addition, Seller agrees that any Broker compensation which is conditioned upon a Broker Sale of the Property shall be earned by Broker as set forth herein without any discount or allowance for any efforts made by Seller or by any other person in connection with such Broker Sale of the Property.

**5. THE LISTING PERIOD.** Broker's authority shall begin November 09, 1999, and shall continue through November 09, 2000 ("Listing Period").

**6. PRICE AND TERMS.** Price: U.S. $ 27,000,000.00 Terms:
Cash at Closing

Minimum amount of earnest money deposit U.S. $ 1,000,000.00 in the form of
wired funds

**7. DEPOSITS.** Broker is authorized to accept earnest money deposits pursuant to a proposed Sale contract. Broker is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the Sale contract.

**8. PRICE TO INCLUDE.** The purchase price includes the following items if owned by Seller (a) if attached to the Property on the date of the agreement for Sale: lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, water softeners, smoke/fire/burglar alarms, security devices, inside telephone wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), and garage door openers including all remote controls; (b) if on the Property whether attached or not on the date of this Listing Contract: storm windows, storm doors, window and porch shades, awnings, blinds, screens, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, all keys; and (c)
all currently on the property

The above described items ("Inclusions") shall be conveyed by Seller to buyer by bill of sale at closing, all in their present condition, ordinary wear and tear excepted, conveyed free and clear of all taxes, liens and encumbrances unless assumed by buyer. The following attached fixtures are excluded from the Sale:
personal items, presents, and some collectables

**9. TITLE AND ENCUMBRANCES.** Seller represents to Broker that title to the Property is solely in Seller's name. Seller shall deliver to Broker true copies of all relevant title materials, lease(s) and survey(s) in Seller's possession and shall disclose to Broker all easements, liens and other encumbrances, if any, on the Property, of which Seller has knowledge. Seller authorizes the holder of any obligation secured by an encumbrance on the Property to disclose to Broker the amount owing on said encumbrance and the terms thereof.

In case of Sale, Seller agrees to convey, by a general deed, only that title Seller has in the Property. All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) shall be paid by Seller and released except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows:
none

The Property is subject to the following leases and tenancies:
A Christmas Rental with the Braddocks and a June, July and August Rental with the Feinbergs  See attached Rental agreements

If the Property has been or will be assessed for local improvements installed at the time of signing a Sale contract, Seller will be responsible for payment of same unless otherwise agreed. Broker may terminate this Listing Contract upon written notice to Seller that title is not satisfactory to Broker.

**10. EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense, Seller's choice of a commitment for, and a policy of, title insurance or an abstract of title to the Property certified to a current date in the amount specified by any Sale contract.

**11. PRORATIONS.** General taxes for the year of closing, based on the taxes for the calender year immediately preceding closing, rents, water and sewer charges, owner's association dues, and interest on continuing loan(s), if any, and
none

shall be prorated to the date of closing.
FHA or private mortgage insurance premium ☐ shall ☒ shall not be apportioned to the date of closing. Any such amount shall be apportioned as follows:
n/a

**12. POSSESSION.** Possession of the Property shall be delivered to buyer as follows:
14 Days after delivery of Deed

The printed portions of this form have been approved by the Colorado Real Estate Commission. (LC14-9-95)
LC14-9-95 OPEN LISTING CONTRACT(AGENCY)(FOR ALL TYPES OF PROPERTY)
RealFAST Forms, Box 4700, Frisco, CO 80443, Version 6.00, ©RealFAST, 1999; Reg# CCOCOL222569
Completed by - Heidi Houston, Broker, Houston and O'Leary, Houston and O'Leary A ResortQuest Company
11/09/99 14:49:38

Page 2 of 4
Seller(s) _____

H 0020

FORF000000331

subject to the leases and tenancies as described in Section 9.

**13. MATERIAL DEFECTS - BROKER DISCLOSURES - INSPECTION.** Seller agrees that any defects of a material nature (including, but not limited to, structural defects; soil conditions; violations of health, zoning or building laws; nonconforming uses and zoning variances) actually known by Broker must be disclosed by Broker to any prospective buyer. Seller agrees that any buyer may have the Property and Inclusions inspected. Seller agrees to provide buyer with a Seller's Property Disclosure form completed to the best of Seller's current, actual knowledge.

**14. COMMISSION TO BROKER.**
   (a) **Commission.** In consideration of the services to be performed by Broker, Seller agrees to pay Broker as follows:
   (1) **Sale Commission.** (i) _____5_____ (%) of the gross sales price in U.S. dollars, or (ii)
   n/a

   (2) **Lease Commission.** (i) _____n/a_____ (%) of the gross rental under the lease in U.S. dollars, or (ii)
   See attached management agreement.

   (b) **When Earned.** Such commission shall be earned upon the happening of any of the following:
   (1) Any Broker Sale of the Property within the Listing Period; or
   (2) Broker finding a buyer who is ready, willing and able to complete the transaction as specified herein by Seller; or
   (3) Any Broker Sale of the Property within _____120_____ calendar days subsequent to the expiration of the Listing Period ("Holdover Period") to anyone with whom Broker negotiated and whose name was submitted, in writing, to Seller by Broker during the Listing Period (including any extensions thereof); provided, however, that Seller shall owe no commission to Broker under this subsection (3) if a commission is earned by another licensed real estate broker acting pursuant to an exclusive right-to-sell listing contract or an exclusive agency listing contract entered into during the Holdover Period.
   (c) **When Applicable and Payable.** The commission obligation shall apply to a Sale made during the Listings Period or made during any extension of such original or extended term. The commission described in subsection (a)(1) shall be payable at the time of the closing of the Sale as contemplated by subsection (b)(1) or (b)(3), or upon fulfillment of subsection (b)(2) where either the offer made by such buyer is defeated by Seller or by the refusal or neglect of Seller to consummate the Sale as agreed upon.
   (d) **Lease and Lease Option Commissions.** If the transaction consists of a lease or a lease and right to purchase the Property, the commission relating to the lease shall be as provided in subsection (a)(2), payable as follows:
   N/A TO BE NEGOTIATED AT LEASE PURSUANT TO HOUSTON AND OLEARYS LEASE RATES

**15. LIMITATION ON BROKER'S COMPENSATION.** Broker shall not accept compensation from the buyer, the buyer's agent, or any entity participating in or providing services for the Sale without the written consent of Seller.

**16. OTHER BROKERS, ASSISTANCE - MULTIPLE LISTING SERVICE.**
   (a) Broker shall seek assistance from and offer compensation to the following brokers outside of the listing company:
   (Check all that apply.)
   ☐ (1) Other Brokers representing Seller ("Subagents").
   (Subagents representing Seller owe duties of utmost good faith, loyalty and fidelity to Seller only. Seller may be vicariously liable for the acts of Subagents when acting in the scope of the agency relationship.)
   Broker will offer compensation to Subagents as follows: (i) _____n/a_____ (%) of the gross sales price in U.S. dollars, or (ii)
   n/a

   ☒ (2) Brokers representing the buyer ("Buyer Agents").
   (Buyer Agents representing the buyer owe duties of utmost good faith, loyalty and fidelity to buyer only. Seller is not vicariously liable for the acts of Buyer Agents.)
   Broker will offer compensation to Buyer Agents as follows: (i) _____2.5_____ (%) of the gross sales price in U.S. dollars, or (ii)
   N/A

   ☒ (3) Brokers assisting the buyer in the transaction but not acting as agents ("Transaction-Brokers").
   (Transaction-Brokers must exercise reasonable skill and care for the parties. Seller is not vicariously liable for the acts of Transaction-Brokers.)
   Broker will offer compensation to Transaction-Brokers as follows: (i) _____2.5_____ (%) of the gross sales price in U.S. dollars, or (ii)
   N/A

   (b) Broker ☐ will ☒ will not submit the Property to a multiple listing service.

**17. IN-COMPANY DUAL AGENCY AND TRANSACTION-BROKER.** If a written Dual Agency Addendum or Transaction-Broker Addendum is signed by Seller, Broker may show Property to buyers represented or assisted by Broker.

**18. FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received shall be divided between Broker and Seller, one-half thereof to Broker, but not to exceed the commission agreed upon herein, and the balance to Seller.

**19. COST OF SERVICES; REIMBURSEMENT.** Unless otherwise specified in Section 28, Broker shall bear all expenses incurred by Broker, if any, to market the Property and to compensate cooperating brokers, if any. Broker will not obtain or order any other products or services unless Seller agrees in writing to pay for them promptly when due. Unless otherwise agreed, Broker shall not be obligated

The printed portions of this form have been approved by the Colorado Real Estate Commission. (LC14-9-95)
LC14-9-95 OPEN LISTING CONTRACT(AGENCY)(FOR ALL TYPES OF PROPERTY)
RealFA$T® Forms, Box 4700, Frisco, CO 80443, Version 6.00, ©RealFA$T®, 1999; Reg# CCOCOL222569
Completed by - Heidi Houston, Broker, Houston and O'Leary, Houston and O'Leary A ResortQuest Company
11/09/99 14:49:38

to advance funds for the benefit of Seller in order to complete a closing. (Examples: surveys, radon tests, soil tests, title reports, engineering studies.) Seller shall reimburse Broker for payments made by Broker for such other products or services authorized by Seller.

**20. MAINTENANCE OF THE PROPERTY.** Seller agrees that Broker shall not be responsible for maintenance of the Property nor shall Broker be liable for damage of any kind occurring to the Property, unless such damage shall be caused by the negligence of Broker.

**21. OTHER SELLERS.** Seller acknowledges that Broker may have agreements with other sellers to market and sell their properties.

**22. NONDISCRIMINATION.** The parties agree not to discriminate unlawfully against any prospective buyer because of the race, creed, color, sex, marital status, national origin, familial status, physical or mental handicap, religion or ancestry of such person.

**23. RECOMMENDATION OF LEGAL COUNSEL.** By signing this document, Seller acknowledges that the Broker has advised that this document has important legal consequences and has recommended consultation with legal and tax or other counsel, before signing this contract.

**24. ALTERNATIVE DISPUTE RESOLUTION: MEDIATION.** If a dispute arises relating to this contract, and is not resolved, the parties involved in such dispute (Disputants) shall first proceed in good faith to submit the matter to mediation. The Disputants will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. In the event the entire dispute is not resolved within thirty (30) calendar days from the date written notice requesting mediation is sent by one Disputant to the other(s), the mediation, unless otherwise agreed, shall terminate. This section shall not alter any date in this contract, unless otherwise agreed.

**25. ATTORNEY FEES.** In case of arbitration or litigation between Seller and Broker in their respective capacities, the parties agree that costs and reasonable attorney fees shall be awarded to the prevailing party.

**26. MODIFICATION OF THIS LISTING CONTRACT.** No subsequent modification of any of the terms of this Listing Contract shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**27. ENTIRE AGREEMENT.** This Listing Contract constitutes the entire agreement between the parties relating to the subject hereof, and any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Listing Contract.

**28. ADDITIONAL PROVISIONS.** (The language of these additional provisions has not been approved by the Colorado Real Estate Commission).
SEE ATTACHED

**29. COPIES OF AGREEMENT.** This Listing Contract is executed in multiple copies and Seller acknowledges receipt of a copy of this Listing Contract signed by Broker.

**30. COUNTERPARTS.** If more than one person is named as a Seller herein, this Listing Contract may be executed by each Seller, individually, and when each Seller has executed a copy of this Listing Contract, such copies taken together shall be deemed to be a full and complete contract between the parties.

Broker
```
Houston and O'Leary
A ResortQuest Company
620 E. Hyman St. #102
Aspen, CO  81611
Phone: 970-925-8664,    Fax: 970-925-8670
```

By: _/s/ Heidi Houston_ _____
Signature    Heidi Houston                                    Date

```
Landlocked Shipping Company
A Turks and Caicos Islands Company
   440 Royal Palm Way, Palm Beach, FL  33480
   Home #: 561-655-9555  Fax #: 561-655-9508
```
SELLER _____
By: Jackie Miller

The printed portions of this form have been approved by the Colorado Real Estate Commission. (LC14-9-95)
LC14-9-95 OPEN LISTING CONTRACT(AGENCY)(FOR ALL TYPES OF PROPERTY)
RealFAST® Forms, Box 4700, Frisco, CO 80443, Version 6.00, ©RealFAST®, 1999; Reg# CCOCOL222569
Completed by - Heidi Houston, Broker, Houston and O'Leary, Houston and O'Leary A ResortQuest Company
11/09/99 14:49:38

Page 4 of 4

H 0022

FORF000000333

# HOUSTON AND O'LEARY
## A ResortQuest Company

Aspen's Fine Home Sales and Rentals

**Additional Provisions to Listing Agreement Dated November 9, 1999,
Between Houston and O'Leary as Agent
and LandLocked Shipping Company, as Seller.**

1. Seller acknowledges that he is subject to withholding as defined under Internal Revenue Code Section 897 (Foreign Person Transferor).

2. Seller hereby agree to engage Pitkin County Title Company as closing agent to provide closing and settlement services in connection with this transaction.

3. Seller and Buyer agree and acknowledge that Colorado Revised Stature section 39-22-604.5 provides that in the case of any conveyance of a Colorado real property interest, the person or party providing closing and settlement services shall be required to withhold an amount equal to 2% of the sales price or the net proceeds resulting from such conveyance, whichever is less, when the transferor is a non-resident of the state of Colorado. Seller shall be obligated to either comply with the withholding requirements of CRS Section 39-22-604.5 or provide an affidavit in form and content satisfactory to the person or party providing closing and settlement services which certifies that seller is not subject to the withholding requirements.

4. Houston and O'Leary shall provide the following services:

    a. Houston and O'Leary shall **not** fax information on the new listing to all top brokerage companies in the Aspen Area.

    b. Houston and O'Leary shall **not** host an exclusive Open House and invite all top brokers to preview the house.

    c. Houston and O'Leary will **not** place pictures of the listed property in their display case at the private plane base operations at the airport for so long as the display space is rented.

    d. Houston and O'Leary shall produce a special high-quality book using the existing photographs and descriptions of the property to be given to prospective clients and sales agents. Distribution is subject to Seller's prior approval.

    f. Houston and O'Leary will **not** provide their standard print advertising in the Travel Guide, Aspen Magazine, Sojourner and other Houston and O'Leary approved publications.

    g. Houston and O'Leary will **not** post the property to their Internet Pages or place in the Mountain Resorts brochure done by ResortQuest.

    h. Houston and O'Leary will allow this agreement to terminate in the event the owner wishes to withdraw this property from the market. However, the owner may not terminate to make a sale directly outside of this agreement.

620 East Hyman Avenue, Suite 102, Aspen, Colorado 81611
Tel: 970.925.8664  800.695.6555  Fax: 970.925.8670
Web: houstonandoleary.com  E-Mail: houston@rof.net

H 0023

FORF000000334

7. Owner shall be responsible for the following:

   a. Upon acceptance of the contract, Seller shall provide agent with a current improvement survey that has been updated that is acceptable by Pitkin County Title Company to provide clear title documents for a potential sale..

   b. Seller shall fill out the attached Homeowner's CheckList and Seller Disclosure form and return to Houston and O'Leary within 10 days.

   c. Prior to closing, Seller shall provide agent with a list of all personal property, art and/or furniture exclusions or a list of all inclusions, and any exclusions shall be listed as well.

   d. Seller agrees to provide agent with access to show the property to other realtors or potential buyers upon 72 hours notice or sooner if the showing appointment is at a convenient time to Seller. Broker may show the property only to prospective buyers who have been prequalified by Seller, in Seller's sole discretion. Broker shall call Dana @ 925-6464 and Dana will turn on all the lights. If the Property is rented, however, there will be no showings.

   e. Owner shall have utilities rooms cleaned up and put into showing condition.

   f. Owner acknowledges that property is currently red-tagged on construction and Owner will continue to pursue permit to clear title and finish the new bedroom.

Agreed: _____   DATE
Landlocked Shipping Company
A Turks and Caicos Islands Co.
By: Jackie Miller

Agreed: *Heidi Houston*   11-16-99   DATE
Houston and O'Leary Companies
Heidi Houston, President

2

H 0024

FORF000000335