UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UNITED STATES OF AMERICA,                  :        09 Civ. 3481 (HB)

                Plaintiff,                  :

       - v. -                  :

ANY AND ALL FUNDS ON DEPOSIT IN            :
ACCOUNT NO. 12671905, HELD IN THE
NAME OF LANDLOCKED SHIPPING                :
COMPANY AT WELLS FARGO BROKERAGE
SERVICES, LLC, AND ALL INTEREST AND        :
OTHER PROCEEDS TRACEABLE THERETO,

                             :

ANY AND ALL FUNDS ON DEPOSIT IN
ACCOUNT NO. 0578010886, HELD IN THE        :
NAME OF LANDLOCKED SHIPPING
COMPANY AT WELLS FARGO BANK, N.A.,         :
AND ALL INTEREST AND OTHER PROCEEDS
TRACEABLE THERETO, and                     :

ONE MERCEDES S600 FOUR-DOOR SEDAN,         :
BEARING VEHICLE IDENTIFICATION
NUMBER WDBGA57G5XA421548,                   :

             Defendants-<u>in</u>-<u>rem</u>.                  :

-------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW
## OF PLAINTIFF UNITED STATES OF AMERICA IN FURTHER SUPPORT
## <u>OF ITS CROSS-MOTION TO STRIKE OR FOR SUMMARY JUDGMENT</u>

PREET BHARARA
*United States Attorney for the*
*Southern District of New York*

*Attorney for the United States of America*

Amy Lester
*Assistant United States Attorney*
   *Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    CLAIMANTS DO NOT HAVE CONSTITUTIONAL STANDING
      UNDER ARTICLE III TO CHALLENGE THE FORFEITURE . . . . . . . . . . . . . . 1

II.   CLAIMANTS DO NOT DISPUTE THAT KOZENY IS A FUGITIVE
      AND THAT THE DISENTITLEMENT DOCTRINE BARS HIM FROM
      FILING A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   THIS ACTION IS NOT TIME BARRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

### CASES

Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rodriguez v. Schneider, No. 95 Civ. 4083 (RPP), 1999 WL 459813 (S.D.N.Y. June 29, 1999) . 3

Scott v. Harris, 550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. 904 Toro Canyon Road, No. CIVA04CV02549EWN-OES,
    2006 WL 36764 (D. Colo. Jan. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. $349,370.09 in U.S. Currency, 22 Fed. Appx. 731 (9th Cir. 2001) . . . . . . . . . 8

United States v. All Funds Distributed to, or on behalf of, Edward Weiss,
    345 F.3d 49 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. All Right, Title and Interest in Real Prop., Appurtenances, and
    Improvements Known as 479 Tamarind Drive, Hallandale, Florida,
    No. 98 Civ. 2279 (RLC), 2005 WL 2649001 (S.D.N.Y. Oct. 14, 2005) . . . . . . . . . . . . . 6

United States v. Cambio Exacto, S.A., 166 F.3d 522 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . 6

United States v. Contents of Accounts Nos. 3034504504 and 144-07143 at Merrill, Lynch,
    971 F.2d 974 (3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. East Carroll Corr. Sys., 14 F. Supp. 2d 851 (W.D. La. 1998) . . . . . . . . . . . . 6

United States v. James Daniel Good Real Prop., 510 U.S. 43, 57 (1993) . . . . . . . . . . . . . . . . 9

United States v. New Silver Palace Restaurant, Inc., 810 F. Supp. 440 (E.D.N.Y. 1992) . . . . 2, 6

United States v. Real Prop. Associated with First Beneficial Mortgage Corp.,
    No. 3:08cv285, 2009 WL 1035233 (W.D.N.C. Apr. 16, 2009) . . . . . . . . . . . . . . . . . . 6

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989) . . . . . . . . . . . . . . . . . . . . . 8

United States v. Premises and Real Prop. with Bldg., Appurtenances and
    Improvements at 191 Whitney Place,
    No. 98-CV-0060 E, 2000 WL 1335748 (W.D.N.Y. Sept. 7, 2000) . . . . . . . . . . . . . . . 2

United States v. Two Bank Accounts,
    Nos. CIV 06-4016-KES, 06-4005, 2008 WL 5431199 (D.S.D. Dec. 31, 2008) . . . . . . . . 6

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES/RULES**

Local Civil Rule 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rule G of the Supplemental Rules for Admiralty or Maritime and
      Asset Forfeiture Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19 U.S.C. § 1621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**SECONDARY SOURCES**

Stefan D. Cassella, Asset Forfeiture Law in the United States, § 10-3 (2007) . . . . . . . . . . . . . . 2

## PRELIMINARY STATEMENT

The undisputed evidence submitted in support of the Government's cross-motion to strike or for summary judgment demonstrates that Claimants Landlocked Shipping Company ("Landlocked") and Dr. Jitka Chvatik ("Dr. Chvatik") (collectively, "Claimants") do not have standing to challenge the forfeiture of the Peak House Funds because they are mere nominees or strawmen for Viktor Kozeny ("Kozeny"), the true party in interest in this action. As set forth below, Claimants have failed to raise a genuine issue of material fact sufficient to defeat summary judgment on this issue and, therefore, the Verified Claim ("Claim") filed by Claimants must be stricken or dismissed for lack of standing. Alternatively, and assuming the Court finds that Kozeny is the true party in interest, the Court should dismiss the Claim pursuant to the fugitive disentitlement doctrine, because Claimants do not dispute that Kozeny is a fugitive and that he is barred from challenging the forfeiture of the Peak House Funds.

## ARGUMENT

### I.   CLAIMANTS DO NOT HAVE CONSTITUTIONAL STANDING UNDER ARTICLE III TO CHALLENGE THE FORFEITURE

The undisputed evidence presented by the Government in support of its cross-motion to strike or for summary judgment conclusively demonstrates that Kozeny, not Claimants, exercised dominion and control over Peak House, was the true owner of Peak House, and is therefore the only party with standing to challenge the forfeiture of the Peak House Funds. Claimants have failed to raise a genuine issue of material fact sufficient to defeat summary judgment on the issue of their standing under Article III of the United States Constitution to challenge the forfeiture in this action.

The asserted basis for Claimants' standing is ownership, stemming from Landlocked's status as former title-holder of Peak House and Dr. Chvatik's status as the purported "beneficial owner" of Landlocked's shares. Because they are relying on a theory of ownership, Claimants must do more than

make a bare assertion of their ownership interest in response to the evidence put forth by the Government; rather, they must affirmatively demonstrate that they are not mere nominees or straw owners by showing that they exercised dominion and control over Peak House. See United States v. Contents of Accounts Nos. 3034504504 and 144-07143 at Merrill, Lynch, 971 F.2d 974, 985 (3rd Cir. 1992) (recognizing that "courts have uniformly rejected standing claims put forward by nominal or straw owners"); United States v. New Silver Palace Rest., Inc., 810 F. Supp. 440, 444 (E.D.N.Y. 1992) (requiring showing of dominion and control prevents an individual involved in criminal wrongdoing from being able to assert a claim in a forfeiture action through a "strawman" or nominee, "which would defeat the statutory purposes of forfeiture of property used in the commission of [offenses that give rise to forfeiture]"); United States v. Premises and Real Prop. with Bldg., Appurtenances and Improvements at 191 Whitney Place, No. 98-CV-0060 E, 2000 WL 1335748, at *2 (W.D.N.Y. Sept. 7, 2000) ([p]ossession of mere legal title by one who does not exercise dominion and control over the property is insufficient . . . to establish standing") (citations and internal quotation marks omitted) (alteration in original); see also Stefan D. Cassella, Asset Forfeiture Law in the United States, § 10-3 (2007) ("a person who has title to the property as a nominee, but who exercises no dominion or control over it, cannot assert standing based on an ownership interest").  Contrary to the argument advanced by Claimants in their opposition brief, the Government is not disputing that courts apply the "facially colorable evidence of ownership" test in determining a claimant's standing.  (Claimants' Reply/Opp. Br. at 14).[1]  But it is clear, based on the precedent cited above and in the Government's moving brief,

---

[1] "Claimants' Reply/Opp. Br." refers to the Reply Memorandum in Support of Claimants' Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Cross-Motion to Strike or for Summary Judgment dated December 30, 2009; "Chvatik Declaration" or "Chvatik Decl." refers to the Declaration of Dr. Jitka Chvatik dated December 16, 2009; "Quelch Declaration" or "Quelch Decl." refers to the Declaration of Ervine M. Quelch dated December 17, 2009; "Govt. Br." refers to the Memorandum of Law of Plaintiff United States of America in Support of its Cross-Motion to Strike or for Summary Judgment and in Opposition to Claimants' Motion for Summary

that meeting the burden of demonstrating "facially colorable evidence of ownership" requires that Claimants affirmatively show that they exercised dominion and control over Peak House. Based on the undisputed evidence before the Court, Claimants have failed to meet that burden.

As demonstrated by the undisputed evidence presented in the Government's Rule 56.1 Statement, Kozeny was the true owner of Peak House and is the real party in interest in this action.[2] In an attempt to create a issue of material fact and stave off summary judgment, Dr. Chvatik has submitted a Declaration containing numerous self-serving statements that are unsupported by the documents attached to the Declaration and the larger record before the Court, as demonstrated below.[3] These statements are plainly insufficient to raise a genuine issue of material fact with respect to standing. See, e.g., Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (nonmoving party may not rely on conclusory allegations or speculation and must show that "its version of the events is not wholly fanciful"). Moreover, Dr. Chvatik's Declaration contains a multitude of arguments and legal conclusions that cannot create a genuine issue of material fact sufficient to defeat summary judgment. See Rodriguez v. Schneider, No. 95 Civ. 4083 (RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument . . . . They should not contain conclusions."); Loc. Civ. R. 56.1(a) (requiring "short and concise statement . . . of the material facts as to which . . . there is no

---

Judgment dated November 24, 2009; "Government's Rule 56.1 Statement" or "Govt. Rule 56.1 Stmt." refers to the Local Civil Rule 56.1 Statement of Undisputed Material Facts in Support of Motion to Strike or for Summary Judgment by Plaintiff United States of America dated November 24, 2009; "Lester Decl." refers to the Declaration of Amy Lester dated November 24, 2009.

[2] Claimants have moved to strike portions of the Government's Rule 56.1 Statement. These arguments are addressed in the Government's opposition brief to that motion, which is being filed separately.

[3] The Government's specific objections to the portions of Claimants Landlocked Shipping Company and Dr. Jitka Chvatik's Statement of Additional Material Facts Pertinent to the Claimants' Standing that are supported by Dr. Chvatik's Declaration are set forth in the Government's responses to that document, filed under separate cover.

3

genuine issue to be tried").

For example, Dr. Chvatik states in her Declaration that she decided to purchase Peak House in 1997 (Chvatik Decl. ¶ 13), but the documents submitted in support of this self-serving statement as Exhibit F do not reference her by name and are not directed to her attention. (See Chvatik Decl., Ex. F). In fact, one of the documents attached as part of Exhibit F to her Declaration indicates that at least a portion of the closing documents for Peak House were obtained by Claimants' counsel from Kozeny himself for purposes of this litigation (see E-mail from Viktor Kozeny to James Nesland dated April 16, 2009 (bearing bates-number CLS00333), Chvatik Decl., Ex. F), which further undercuts Dr. Chvatik's claim that she was involved in the purchase of Peak House. In addition, the document attached to Dr. Chvatik's Declaration in support of her self-serving statement that Hans Bodmer of the von Meiss Blum law firm sent her documents "confirming that Landlocked had acquired Peak House on my behalf" relate to the sale of a different property in Colorado, not Peak House. (Compare Assignment and Acceptance of Contract, Chvatik Decl., Ex. J, which refers to contract of sale to buy property dated June 6, 1997 between Landlocked and the Ayers Family Trust with Contract of Sale for Peak House dated May 30, 1997 between Landlocked and the Normanstone Foundation, included in Closing Documents, Chvatik Decl., Ex. F). Thus, these unsupported statements by Dr. Chvatik should not be relied upon by the Court in determining whether there is a genuine issue of material fact as to Claimants' standing.

Dr. Chvatik also claims that in 1999 she decided to rent Peak House and put it on the market for sale. (Chvatik Decl. ¶ 27). But it is undisputed that, by this point in time, Kozeny had already been confronted by several investors in the Azeri privatization scheme about their suspicions that he had defrauded them (Govt. Rule 56.1 Stmt. ¶ 55), and he undoubtedly worried that Peak House could become subject to lawsuits brought by disgruntled investors. Therefore, it is only at this point, in 1999,

almost two years after the purchase of Peak House, that Dr. Chvatik's name appears on any documents associated with the property. And despite this effort by Kozeny to make it appear as if Dr. Chvatik was in charge of the decisions with respect to Peak House, Kozeny continued to be the point of contact for real estate agent Heidi Houston regarding the possible sale of the property. (Govt. Rule 56.1 Stmt. ¶ 56-58; Lester Decl. Exs.17-19, 21).

Claimants have also submitted the Declaration of Ervine M. Quelch, who was involved in the formation and management of Landlocked in an attempt to raise a genuine issue of material fact as to standing. But the statements contained in the Quelch Declaration are not sufficient to defeat summary judgment. Neither the Quelch Declaration itself nor any of the documents attached thereto demonstrate that Dr. Chvatik had any role in setting up Landlocked or deciding to purchase Peak House. Indeed, the only document that even mentions Dr. Chvatik is the January 14, 1999 Declaration of Trust. (Quelch Decl., Ex. I). This document, executed well after the purchase of Peak House and after Kozeny had reason to think that his assets might be subject to claims brought by the disgruntled investors whom he had defrauded through the Azeri privatization scheme, proves nothing about whether Dr. Chvatik exercised any degree of control over Peak House. Similarly, the fact that Mr. Quelch states that he does not know Kozeny (Quelch Decl. ¶ 15) is insufficient to raise an issue of material fact with respect to Claimants' standing because it is not inconsistent with Kozeny's efforts to shield his assets through the use of third-party nominees.

With respect to Dr. Chvatik's status as the so-called "beneficial owner" of Landlocked's shares, Claimants do not even attempt to address the cases cited in the Government's moving brief in support the proposition that a shareholder does not have standing to contest the forfeiture of a corporation's assets. (See Govt. Br. at 13-15). It is well established that because shareholders lack an ownership interest in the *specific property* belonging to a corporation, they lack standing to challenge the forfeiture

of the corporation's assets. See United States v. Real Prop. Associated with First Beneficial Mortgage

Corp., No. 3:08cv285, 2009 WL 1035233, at *4 (W.D.N.C. Apr. 16, 2009); United States v. Two Bank

Accounts, Nos. CIV 06-4016-KES, 06-4005, 2008 WL 5431199, at *5 (D.S.D. Dec. 31, 2008); United

States v. All Right, Title, and Interest in Real Property, Appurtenances and Improvements Known as

479 Tamarind Drive, No. 98 Civ. 2279 (RLC), 2005 WL 2649001, at *4 (S.D.N.Y. Oct. 14, 2005); New

Silver Palace Rest., 810 F. Supp. at 443; United States v. East Carroll Corr. Sys., 14 F. Supp. 2d 851,

853-54 (W.D. La. 1998).  Claimants utterly fail to dispute the proposition that Dr. Chvatik does not

have legal title to Landlocked's assets or a specific ownership interest in those assets that gives rise to

standing for forfeiture purposes.

Instead, Claimants argue that Dr. Chvatik will suffer financial injury as a result of the forfeiture

of the Peak House Funds, and therefore must have standing. (Reply/Opp. Br. at 26-27). This argument

is unavailing.  A nominee or straw owner does not suffer injury from the forfeiture of the asset over

which she claims ownership and therefore lacks standing to challenge the forfeiture.  United States v.

Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir. 1999) ("It is because of the lack of proven injury that

we have . . . denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for

somebody else.  Such owners do not themselves suffer an injury when the property is taken.").  Dr.

Chvatik's self-serving and conclusory statements in her Declaration that she is the person "who will be

wrongfully deprived of the funds . . . forfeited in this action" (Chvatik Decl. ¶ 32) cannot raise an issue

of material fact on this point.  As a nominee for Kozeny who did not exercise dominion and control over

Peak House, Dr. Chvatik is not the true party in interest in this action.  Therefore, she will suffer no

actual injury if the Peak House Funds are forfeited.

It is well-settled that evidence presented by the non-moving party that is so "blatantly

contradicted by the record . . . that no reasonable jury could believe it" should not be accepted by the

court for purposes of defeating a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007); accord Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."). This is exactly the type of evidence presented by Claimants on the issue of standing, and it is therefore insufficient to defeat the Government's motion for summary judgment.[4]

## II.   CLAIMANTS DO NOT DISPUTE THAT KOZENY IS A FUGITIVE AND THAT THE FUGITIVE DISENTITLEMENT DOCTRINE BARS HIM FROM FILING A CLAIM

Claimants do not dispute that Kozeny is a fugitive and that the fugitive disentitlement doctrine, as codified at 28 U.S.C. § 2466, bars his ability to file a claim to the Peak House Funds. Thus, assuming the Court finds that Kozeny is the true party in interest in this action, and that Claimants are merely nominees who have filed the Claim on his behalf, the Court should grant the Government's motion for summary judgment and dismiss the Claim pursuant to the fugitive disentitlement doctrine.

## III.   THIS ACTION IS NOT TIME BARRED

Even if the Court finds that Claimants have raised a genuine issue of material fact sufficient to defeat the Government's motion to strike or for summary judgment with respect to standing, the Court should deny Claimants' motion for summary judgment on statute of limitations grounds.[5] The

---

[4] If the Court determines that Claimants have raised an issue of material fact sufficient to defeat summary judgment with regard to their standing to challenge the forfeiture of the Peak House Funds, the Government requests that the Court hold an evidentiary hearing, pursuant to Rule G(8)(c)(ii)(B) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, at which Claimants would bear the burden of establishing standing by a preponderance of the evidence, in order to resolve the issue.

[5] The Court must resolve the Government's motion before turning to Claimant's motion, because "[a] claimant who lacks standing is not entitled to challenge the forfeiture on the merits." Rule G(8)(c)(ii)(A), 2006 advisory committee's note.

applicable limitations period has been tolled during the time of Kozeny's absence from the United States and, therefore, this action is timely. Alternatively, the Court should invoke the doctrine of equitable tolling in favor of the Government and allow the action to proceed.

The statute of limitations provision applicable to this civil forfeiture action provides that "the time of the absence from the United States of <u>the person subject to the penalty or forfeiture</u>, or of any concealment or absence of the property, shall not be reckoned within the 5-year period of limitation." 19 U.S.C. § 1621(2) (emphasis added). Claimants argue that the tolling language underscored above does not apply to <u>in rem</u> civil forfeiture actions; rather, only the language regarding concealment or absence of the property is applicable in such actions. (Reply/Opp. Br. at 2-9). But the plain language of the statute itself provides that there are two alternative grounds for tolling the limitations period, and unlike Section 1621(1), which contains a limitation as to its applicability to certain types of actions, Section 1621(2) contains no such limitation. 19 U.S.C. § 1621. Therefore, the Court should apply the statue according to its terms. <u>United States</u> v. <u>Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989) (where the statute's language is "plain, 'the sole function of the courts is to enforce it according to its terms'") (citation omitted).

The interpretation urged by Claimants is not only contradicted by the plain language of the statute, but also unsupported by any cases construing Section 1621(2). In fact, the two courts presiding over <u>in rem</u> civil forfeiture actions in which this issue has arisen have applied the tolling provision due to the absence of the individual wrongdoer whose actions gave rise to the forfeiture. <u>See United States</u> v. <u>904 Toro Canyon Road</u>, No. CIVA04CV02549EWN-OES, 2006 WL 36764, at *7-*8 (D. Colo. Jan. 5, 2006) (noting that, pursuant to Section 1621(2), "[t]he statute of limitations is tolled any time a person 'subject to the penalty or forfeiture' has been continually absent," and tolling statute of limitations as to non-claimant fugitive); <u>United States</u> v. <u>$349,370.09 in U.S. Currency</u>, 22 Fed. Appx.

731, 733-34 (9th Cir. 2001) (Section 1621(2) tolls statute of limitations during period of fugitive's absence from the United States). Thus, this Court should follow the two courts who have actually applied Section 1621(2) in in rem actions involving the absence of a person rather than property, and toll the statute of limitations period in this action.

Finally, Claimants argue that the Government is not entitled to equitable tolling because it was not prevented from filing its civil forfeiture action prior to the resolution of the Colorado litigation. (Reply/Opp. Br. at 10). But as Claimants recognize in their brief, a necessary prerequisite to any in rem civil forfeiture action is that the court be able to exercise in rem jurisdiction over the property at issue. (See Reply/Opp. Br. at 8 (citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 57 (1993) (holding that "to institute and perfect proceedings in rem . . . the thing should be actually or constructively within the reach of the court") (citation and internal quotation marks omitted) and United States v. All Funds Distributed to, or on behalf of, Edward Weiss, 345 F.3d 49, 55 (2d Cir. 2003) (holding that jurisdiction in in rem case "depends upon a court's initially . . . having control of the physical res") (citation omitted)). Thus, the Government was constructively prevented from filing a civil forfeiture action against Peak House or the Peak House Funds while the injunction in the Colorado litigation was in place, because any action would have been jurisdictionally deficient and subject to dismissal. See Weiss, 345 F.3d at 58 (noting that because funds held in ERISA plan could not be seized and thereby brought within the jurisdiction of the court, "it likely would have been an abuse of discretion for a court to have allowed the [civil in rem forfeiture] action to proceed"). That is why, instead of filing a civil action, the Government wrote a letter to Judge Babcock, informing him that the Peak House Funds were subject to forfeiture in the criminal case, in order to preserve its interest. (Govt. 56.1 Stmt. ¶ 90). Once it received notice that the Colorado litigation was resolved, the Government filed the instant action in less than thirty days. Therefore, because the Government has consistently

9

acted with due diligence to preserve its interest in the Peak House Funds, equitable tolling is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's cross-motion to strike or for summary judgment and dismiss the Claim for lack of standing or, alternatively, on the basis of the fugitive disentitlement doctrine. In the event that the Court reaches the statute of limitations issue, it should deny Claimants' motion for summary judgment because the statute has been tolled during the period of Kozeny's absence from the United States. Alternatively, the Court should invoke the doctrine of equitable tolling and find that the instant civil forfeiture action is timely.

Dated: New York, New York
      January 11, 2010

Respectfully submitted,

PREET BHARARA
United States Attorney
for the Southern District of New York
Attorney for Plaintiff
United States of America

By: _____
   Amy Lester (AL-3398)
   Assistant United States Attorney
   One St. Andrew's Plaza
   New York, New York 10007
   Tel.: (212) 637-2416
   Fax: (212) 637-0421